AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California

United States of America

v.

YEFEI WEN,

Defendant.

FILED
CLERK, U.S. DISTRICT COURT
7/7/21
CENTRAL DISTRICT OF CALIFORNIA
BY: ___slo___ DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
7/7/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___jb___ DEPUTY

Case No.    2:21-mj-03209-Duty

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of July 6, 2021, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 970(a) | Damaging Property Occupied by a Foreign Government |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Maron Kim
Complainant's signature

Maron A. Kim, DSS Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:  7/7/21

John E. McDermott
Judge's signature

City and state: Los Angeles, California

Hon. John E. McDermott, U.S. Magistrate Judge
Printed name and title

AUSA: Anna Farias-Eisner – (213) 894-2170

**AFFIDAVIT**

I, MARON A. KIM, being duly sworn, declare and state as follows:

## I.   PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal complaint and arrest warrant against YEFEI WEN for a violation of Title 18, United States Code, Section 970(a): Damaging Property Occupied by a Foreign Government.

2.   This affidavit is also made in support of an application for a warrant to search the following six digital devices (collectively, the "SUBJECT DEVICES"), in the custody of the United States Department of State, Diplomatic Security Service ("DSS"), in Los Angeles, California, as described more fully in Attachment A (collectively, the "SUBJECT DEVICES"):

    a.   SUBJECT DEVICE 1: Yellow Honor brand cellular phone, model and serial number unknown, with a checkered pattern on the back with minor scratches on the lower section of the backing.

    b.   SUBJECT DEVICE 2: Black iPhone, Model: A1784, IC: 579C-E3092A, with cracked screen around the edges.

    c.   SUBJECT DEVICE 3: Silver MacBook Air laptop, serial number NC02MXE176083.

    d.   SUBJECT DEVICE 4: Black and red Scandisk Blade 4gb Thumb Drive.

    e.   SUBJECT DEVICE 5: Black EVIDA Digital voice recorder, 8gb.

f.  SUBJECT DEVICE 6: Gray SONY digital voice recorder.

3.  The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Section 970 (damaging and invading property occupied by foreign government), 112 (use of dangerous weapon to attack the official premises of or to intimidate and threaten a foreign official), 115 (influencing federal official by threat), 878 (threaten to assault or make violent attack upon the liberty of a foreign official), and 924(c) (carrying a dangerous weapon during or in relation to any crime of violence) (collectively, the "Subject Offenses"), as described more fully in Attachment B.  Attachments A and B are incorporated herein by reference.

4.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

5.  I am a Special Agent ("SA") with the United States Department of State, Diplomatic Security Service ("DSS") and

have been so employed since November 2020.  I attended and completed the Criminal Investigative Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia.  Additionally, I received additional training specific to offenses regarding the conduct of diplomacy while attending the Basic Special Agent Course provided by DSS's Training Bureau.

### III.  SUMMARY OF PROBABLE CAUSE

6.  On July 6, 2021, YEFEI WEN damaged Chinese Consulate property in Los Angeles by driving his rental vehicle into the front gate of the Consulate multiple times until the gate broke.  YEFEI WEN used a hammer to damage the façade of the building, breaking a sign and attempting to smash the windows.  YEFEI WEN was arrested by Los Angeles Police ("LAPD"), and at the time of his arrest, he possessed the SUBJECT DEVICES.

### IV. STATEMENT OF PROBABLE CAUSE

7.  Based on my review of law enforcement reports, conversations with other law enforcement agents and officers, conversations with the security guard protecting the outside of the Chinese Consulate building, the Chinese security employee watching security camera footage, and my own participation in the investigation, I am aware of the following:

**A.   YEFEI WEN Damages the Chinese Consulate Building**

8.  On July 6, 2021, YEFEI WEN drove his rental car to the Chinese Consulate-General at 443 Shatto Place, Los Angeles, California 90020, within the Central District of California.  The Chinese Consulate belongs to, is utilized by, or is occupied

by a foreign government, international organization, foreign official, or foreign guest, including the Consul General.

9. Initially, YEFEI WEN parked his car in front of the Consulate and appeared to take photos of the Consulate building. He also attempted to set up his cell phone on a tripod. When the tripod did not work properly, he walked around the Consulate looking for a way into the building. As YEFEI WEN walked towards the employee parking lot entrance, a security guard stopped him and asked him to leave the area because it required authorized access, which YEFEI WEN did not have. YEFEI WEN re-entered his car and attempted to drive the car into the front gates of the Chinese Consulate directly from the street. When YEFEI WEN's car was unable to drive over the curb from the street, YEFEI WEN drove around the side of the building and onto the sidewalk from a lower point in the curb. YEFEI WEN proceeded to drive his vehicle into the Chinese Consulate gate at least four times, breaking the gate and the gate's lock, and bending the iron gate.

10. YEFEI WEN exited the vehicle with a hammer in hand at the entrance of the Consulate, and attacked the façade of the building, breaking a metal sign off the building wall and bending the metal sign. He also hit the window of the Consulate, which turned out to be a reinforced window, but still resulted in scratches to the window. He also drove through the shrubbery in front of the Consulate, resulting in damage to the trees and plants. YEFEI WEN re-entered his vehicle and drove

down the ramp to the employee entrance, where he was cornered by local law enforcement and detained.

11. A search of YEFEI WEN's vehicle recovered a hammer on the front passenger seat of the vehicle, along with the six SUBJECT DEVICES, as well as rope and a switchblade. Additionally, the rental car has visual scratches, dents, detached front bummer, and dented front passenger door.

**B.   Witness Interviews**

12. After speaking with LAPD Officers Stilkey, Chin, and Rodriguez, I learned the following:

    a.   LAPD officers interviewed witness D.W., who works as a security guard at the consulate, and stated that D.W. observed YEFEI WEN park his vehicle in front of the building and take photographs of the building.  D.W. notified a supervisor of YEFEI WEN's activities.  When D.W. asked YEFEI WEN to leave, D.W. stated that YEFEI WEN became irate and returned to his vehicle.  YEFEI WEN drove his vehicle into the iron front gate at least four times.  Then, D.W. stated that YEFEI WEN exited the vehicle with a hammer and struck the building, breaking the sign.  YEFEI WEN returned to his vehicle, drove down the driveway, and was apprehended by officers.

    b.   LAPD officers interviewed witness M.Y., who is a Chinese diplomat and works at the consulate.  M.Y. stated that M.Y. observed the incident on the surveillance video while it occurred.  M.Y. stated that M.Y. was already aware of YEFEI WEN because of an e-mail YEFEI WEN sent to the Consulate approximately one day before, demanding a meeting with the

Consul General and that the Chinese government pay for YEFEI WEN's flight back to China. M.Y. stated that YEFEI WEN's e-mail ended with YEFEI WEN stating that if he were not allowed into the Consulate, he would force entry in.

    **C.    YEFEI WEN's Statements**

13. Upon detention at the Chinese Consulate, YEFEI WEN was read his Miranda rights by responding LAPD officers. He said he wanted to speak with a Mandarin-speaking individual. The interview ceased.

14. YEFEI WEN was transported to LAPD Olympic Division Police Station. YEFEI WEN was re-read his Miranda rights, which YEFEI WEN stated he understood and signed a consent form. During the interview, YEFEI WEN explained, inter alia, that: he is a Chinese citizen; he has a United States green card; he lives in Houston, Texas; he flew to Los Angeles for the funeral of an individual of Chinese nationality; he rented a car from Los Angeles International Airport; he reached out to the Chinese Consulate for support at the funeral; and he became upset when support was not provided. He also stated that he tried to get an appointment for a visa to Hong Kong but did not receive the help he wanted. When asked about the incident involving damaging the Consulate building, he stated that he did not want to speak with officers or agents anymore. The interview then ceased.

    **D.    Additional Investigation**

15. On July 7, 2021, I spoke with DSS Investigative Specialist Nikko Cataluña and learned the following:

   a. YEFEI WEN is a Chinese national, who was granted lawful permanent resident status in the United States in June 2021.

   b. According to the Texas Department of Motor Vehicle records, YEFEI WEN's registered address is in Pearland, Texas.

## V. TRAINING AND EXPERIENCE REGARDING THE SUBJECT OFFENSES

16. Based on my training and experience and information obtained from other law enforcement officers and agents who investigate crimes such as the Subject Offense, I have learned that individuals who commit crimes such as the Subject Offenses will use cell phones or other digital devices for some or all of the following reasons:

   a. They will use website mapping programs (i.e. Google or Bing) to see where foreign government property is located in a specific area;

   b. They will search online newspaper articles to read what information is available regarding the foreign government;

   c. They will search online newspaper articles or websites to view the security images of the foreign government property;

   d. They will use their phones and digital devices to:

     i. Take photos and videos of potential locations they considered targeting;

        ii.  Take photos and videos from scouting or planning trips to the potential location;

        iii. Take photos and videos while committing the offense;

        iv.  They will use audio recorders to plan and to document their criminal conduct;

        v.  They will send text and other messages to co-conspirators, associates, and others regarding their criminal activities; and

        vi.  They will use digital devices for planning and communication regarding the offenses.  As discussed above, YEFEI WEN purportedly communicated with the Consulate in the days leading up to the charged conduct.  I believe evidence of these communications will be found on the SUBJECT DEVICES.

    e.  In addition, the search of a cell phone can reveal GPS location information including historical location data to show whether the suspect's phone was located near the foreign government property around the time of the attacks.

    f.  Further, as discussed above, YEFEI WEN used a digital device to attempt to record his attack on the Consulate.  Therefore, I believe evidence of the planning, as well as evidence showing the crime itself, is likely to be found on the SUBJECT DEVICES.

### VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

17.  As used herein, the term "digital device" includes the SUBJECT DEVICES.

18. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

   a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

   b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat

programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

       c.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

       d.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

19.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

       a.    Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

b.  Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

20.  The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

a.  Users may enable a biometric unlock function on some digital devices.  To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device.  To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second.  To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

b.  In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts.  Thus, the opportunity to use a biometric unlock function even on an

enabled device may exist for only a short time. I do not know the passcodes of the devices likely to be found in the search.

       c.    The person who was in possession of a device or had the device among his or her belongings is likely a user of the device. Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress YEFEI WEN's thumb- and/or fingers on the device(s); and (2) hold the device(s) in front of YEFEI WEN's face with his or her eyes open to activate the facial-, iris-, and/or retina-recognition feature.

21.    Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VII. CONCLUSION

22.    For all the reasons described above, there is probable cause to believe that YEFEI WEN has committed a violation of Title 18, United States Code, 970. There is also probable cause that the items to be seized described in Attachment B will be

found in a search of the SUBJECT DEVICES described in Attachment A.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 7th day of July, 2021.

*John E. McDermott*

THE HONORABLE JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE